IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| vs. | ) Criminal Action No. 13-00147-KD-C |
| | ) |
| JERRY WAYNE DISON, | ) |
| | ) |
| Defendant. | ) |

## ORDER

This action is before the Court on Defendant Jerry Wayne Dison's request for "Compassionate Release to Home Confinement" construed as a motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) (doc. 65)[1] and the United States' response (doc. 68). Upon consideration, and for the reasons set forth herein, the motion for compassionate release is dismissed without prejudice. To the extent that his motion could be construed as a motion pursuant to the Coronavirus Aid, Relief, and Economic Security Act (CARES Act), Pub. L. No. 116-136, § 12003(b)(2), 134 Stat. 281, 516 (to be codified at 18 U.S.C. § 3621), the motion is denied.

I. Background

In late 2013, Dison plead guilty to the offense of failure to register as a sex offender in violation.[2] He was sentenced to a term of two months incarceration and five years of supervised release (doc. 33). His supervised release was revoked in 2015 and he was sentenced to twelve months and one day (doc. 48). His supervised release was revoked again in April 2019 and he

---

[1] Daniele v. United States, 740 Fed. Appx. 973, 977 (11th Cir. 2018) ("… we have held that pro se 'pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed.'") (quoting Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998)).

[2] Dison was convicted of Rape 2nd degree in 2000.

was sentenced to twenty-four months in prison (doc. 64).  Dison is currently serving this sentence. He is incarcerated to FCI Oakdale I in Oakdale, Louisiana.

II. Exhaustion

In relevant part, the compassionate release provision of 18 U.S.C. § 3582(c), as amended by the First Step Act of 2018, provides that "the court . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment" upon finding that there are extraordinary and compelling reasons which warrant a reduction in sentence. 18 U.S.C. § 3582(c)(1)(A)(i); First Step Act of 2018, Pub. L. 115-391, § 603(b), 132 Stat. 5194, 5239.

Dison does not state that he exhausted his administrative remedies or that 30 days have lapsed since the Warden of his facility received his request for compassionate release (doc. 65). The United States reports that as of May 5, 2020, the Bureau of Prisons had no record of a request for compassionate release from Dison (doc. 68, p. 12). Since Dison failed to comply with either of the two statutory requirements, the Court finds that he has not met the necessary prerequisites for consideration of his motion. Accordingly, Dison's motion is due to be dismissed without prejudice for failure to meet the statutory prerequisites.[3]

---

[3] District courts are split on the issue of whether the statutory exhaustion or lapse requirements may be waived as futile because of the Covid 19 pandemic, but the majority of district courts have found that the exhaustion requirement created by Congress is not subject to "judge-made exceptions".  See United States v. Smith, No. 8:17-CR-412-T-36AAS, 2020 WL 2512883, at *4 (M.D. Fla. May 15, 2020) (collecting cases).  Some consider the ability to file a motion after the lapse of 30 days, is a "futility exception" that is "'baked'" into the text of the § 3582(c)(1)(A)(i). United States v. Purry, 2020 WL 2514878, at *2 (D. Nev. May 14, 2020) (citation omitted).

III. Compassionate release

However, even assuming that Dison met the statutory prerequisite, he is not entitled to compassionate release. Once a sentence is imposed, the "authority of a district court to modify an imprisonment sentence is narrowly limited by statute." United States v. Phillips, 597 F.3d 1190, 1194-95 (11th Cir. 2010). Specifically, the "court may not modify a term of imprisonment once it has been imposed except" as set out in 18 U.S.C. § 3582(c). The compassionate release provision of 18 U.S.C. § 3582(c)(1)(A)(i) provides that the Court "may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the [applicable] factors set forth in 18 U.S.C. § 3553(a)", if the court finds that "extraordinary and compelling reasons warrant such a reduction" and the reduction is "consistent with applicable policy statements issued by the [United States] Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A).

"Extraordinary and compelling" reasons are not defined in the statute. Instead, Congress gave the Sentencing Commission the duty to promulgate general policy statements regarding sentence modifications pursuant to 18 U.S.C. § 3582(c)(1)(A) and stated that the Commission "shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). Congress also stated that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." Id.

---

However, Dison did not ask for waiver. He simply states that his motion is "urgent" (doc. 65, p. 7). While the Court may liberally construe his pro se motion, it cannot rewrite the motion. See Gilmore v. Hodges, 738 F. 3d 266, 281 (11th Cir. 2013) (The law is clear that pro se pleadings are held to a less demanding standard than counseled pleadings and should be liberally construed. . . . But liberal construction is not the same thing as wholesale redrafting.") (internal citations omitted).

Before the First Step Act, the Sentencing Commission promulgated the following policy statement:

> Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—
>
> > (1) (A) Extraordinary and compelling reasons warrant the reduction; or . . .
> >
> > (2) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
> >
> > (3) The reduction is consistent with this policy statement.

U.S.S.G. § 1B1.13.[4]

The Application Notes to the Policy Statement include four examples of extraordinary and compelling reasons to consider reduction of a sentence under § 3582(c)(1)(A). The defendant's physical, mental, or medical condition may qualify if certain criteria are met. U.S.S.G. § 1B1.13 cmt. n. 1(A). Specifically, if the

> i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>
> (ii) The defendant is—
>
> > (I) suffering from a serious physical or medical condition,

---

[4] Subparagraph(B) provides for consideration of compassionate release if "[i]he defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned[.]"  Since Dison is 43 years old, this statute cannot apply to him.

>> (II) suffering from a serious functional or cognitive impairment, or
>
> (III) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

U.S.S.G. §1B1.13 cmt. n. 1(A).

Dison does not allege that he is terminally ill, that he has serious functional or cognitive impairment, or that he is experiencing deteriorating physical or mental health because of the aging process such that he cannot care for himself. Dison does allege that he has "chronic asthma" (doc. 65, p. 2). His chronic asthma may fall within the criteria of Application Note A, if he shows that he is "suffering from a serious . . . medical condition . . . that substantially diminishes" his ability to provide self-care in the correctional facility. U.S.S.G. §1B1.13 cmt. n. 1(A). However, Dison does not provide any evidence as to the seriousness of his chronic asthma and its effect on his ability to care for himself in prison.[5] United States v. Smith, No. 8:17-CR-412-T-36AAS, 2020 WL 2512883, at *6 (M.D. Fla. May 15, 2020) ("Smith, however, does not allege a terminal illness or that his asthma substantially diminishes his ability to care for himself in prison. Nor does he submit documentary evidence demonstrating that he suffers from severe asthma. As such, Smith fails to demonstrate that his asthma constitutes an extraordinary and compelling reason warranting relief.").

---

[5] The Bureau of Prison's Program Statement No. 5050.50 addressing "Compassionate Release/Reduction in Sentence" Procedures for Implementation of 18 U.S.C. §§ 3582 and 42059g)" identified a "Debilitated Medical Condition" and states that a reduction in sentence "consideration may also be given to inmates who have an incurable, progressive illness or who have suffered a debilitating injury from which they will not recover. The BOP should consider a RIS if the inmate is: Completely disabled, meaning the inmate cannot carry on any self-care and is totally confined to a bed or chair; or Capable of only limited self-care and is confined to a bed or chair more than 50% of waking hours."

The district court may consider the "Age of the Defendant." U.S.S.G. § 1B1.13 cmt. n.1(B). Specifically, whether the "defendant (i) is at least 65 years old); (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less." Id., cmt. n. 1(B). Since Dison is 43 years old, he does not fall within the parameters of this example.

The district court may consider Dison's "Family Circumstances." Id., at cmt. n. (1)(C). Specifically, "(i) The death or incapacitation of the caregiver of the defendant's minor child or minor children" and "(ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.". Id. Dison does not indicate whether he has minor children or an incapacitated spouse or partner (doc. 65).

Last, the district court may consider "Other Reasons – As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." Id., cmt. n. (1)(D). Since Dison does not appear to fall within the parameters of (A) through (C), his request may fall under subparagraph (D).

In its present version, subparagraph (D) "leaves identification of other 'extraordinary and compelling reason[s]' to the Director of the Bureau of Prisons." United States v. Fox, No. 2:14-CR-03-DBH, 2019 WL 3046086, at * 3(D. Me. July 11, 2019). But now that the First Step Act allows the inmate to file for compassionate release without the BOP's support, it is unclear what "other" reasons can be relied upon for compassionate release. However, the Court finds that until the Sentencing Commission amends its Policy Statement "those other extraordinary and

compelling reasons should be comparable or analogous to what the Commission has already articulated as criteria for compassionate release." United States v. Fox, 2019 WL 3046086, at *3.

Dison argues that because he has chronic asthma, a respiratory ailment "identified by the Center for Disease Control (CDC) as a major underlying health risk factor" his "risk of mortality is elevated" should he contract the Covid-19 virus. He asks to be removed from the "high density human inmate population exposure inside the prison dormitory" where he cannot effectively distance himself from other inmates or practice better sanitary procedures.(doc. 65, p. 3-4). He asserts that seven inmates at FCI Oakdale I have died from Covid 19 as of April 18, 2020, and the majority had underlying health risk factors identified by the CDC (Id., p. 3-4).

The United States argues that the Covid 19 pandemic does not fall within any of the categories identified in the Sentencing Commission's Policy Statement or Application Notes and since § 3582(c) authorizes a reduction in sentence, only if it is consistent with the Policy Statement, Dison's motion should be denied. The United States points out that an extraordinary and compelling reason consistent with the Policy Statement, would be a "specific serious medical conditions afflicting an individual inmate, not generalized threats to the entire population" (doc. 68, p. 21).

The United States also states that where an inmate has a chronic medical condition identified by the CDC as elevating the risk of serious illness from Covid 19, that condition may be an extraordinary and compelling reason for compassionate release. The United States points out that the CDC identifies "'moderate to severe asthma' … as putting a person at higher risk for severe illness due to a Covid-19 infection" but argues that Dison has not met his burden to show that "his asthma – for which he can receive treatment while incarcerated – is more serious or that

the combination of his asthma with the conditions in prison and the Covid-19 pandemic would substantially diminish his ability to provide self-care" (doc. 68, p. 23-24).

Dison's potential to contract Covid 19 because of the close living conditions and documented Covid 19 outbreak at FCI Oakdale I,[6] in combination with asthma that is severe enough to be considered a serious medical condition that elevates his risk of mortality, may be comparable or analogous.  The CDC has identified persons who are at "high-risk for severe illness from Covid-19" as "People of all ages with underlying medical conditions, particularly if not well controlled, including: People with chronic lung disease or moderate to severe asthma[.]" People Who Are at Higher Risk for Severe Illness, [7] https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html. However, again, Dison has not provided the Court with any evidence to support his statement that he has chronic asthma or whether it is moderate to severe such that he may be at high risk for severe illness from Covid-19. Moreover, it is the BOP who is in a better position to evaluate the risks.

---

[6] "The COVID-19 pandemic poses a serious danger to society at large. Moreover, COVID-19 poses a higher risk to incarcerated individuals who are unable to practice public health precautions that are otherwise available to the general public, such as social distancing practices." United States v Bueno-Sierra, No. 93-CR-00567, 2020 WL 2526501, at *2 (S.D. Fla. May 17, 2020).

[7] "Based on what we know now, those at high-risk for severe illness from COVID-19 are: People 65 years and older, People who live in a nursing home or long-term care facility.  People of all ages with underlying medical conditions, particularly if not well controlled, including: People with chronic lung disease or moderate to severe asthma; People who have serious heart conditions; People who are immunocompromised (Many conditions can cause a person to be immunocompromised, including cancer treatment, smoking, bone marrow or organ transplantation, immune deficiencies, poorly controlled HIV or AIDS, and prolonged use of corticosteroids and other immune weakening medications); People with severe obesity (body mass index [BMI] of 40 or higher); People with diabetes; People with chronic kidney disease undergoing dialysis; People with liver disease."

IV. CARES Act

Although Dison does not specifically mention the CARES Act, he does ask for release to home confinement. As the United States points out, the CARES Act gives the Director of the BOP the authority, in certain circumstances, to extend the maximum amount of time that a prisoner may be placed under home confinement pursuant to 18 U.S.C. § 3624(c)(2) (doc. 68, p. 24-25). However, the CARES Act did not give the Court authority to direct the BOP to place Dison in home confinement. Therefore, to the extent that Dison's motion is brought pursuant to the CARES Act, the motion is denied.[8]

**DONE** and **ORDERED** this 20th day of May 2020.

                                                  **s / Kristi K. DuBose**
                                                  **KRISTI K. DuBOSE**
                                                  **CHIEF UNITED STATES DISTRICT JUDGE**

---

[8] The United States pointed out that on April 3, 2020, Attorney General William Barr recognized the increased levels of Covid-19 infections at certain facilities and directed the Director of the BOP to "immediately review all inmates who have COVID-19 risk factors, as established by the CDC, starting with the inmates incarcerated at FCI Oakdale …" for possible home confinement (doc. 68, p. 30). Memorandum from Attorney General William Barr to Director of Bureau of Prisons, Increasing Use of Home Confinement at Institutions Most Affected by COVID-19 (April 3, 2020), available at https://www.justice.gov/file/1266661/download